UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **SOUTHERN POVERTY LAW CENTER, INC.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**UNITED STATES DEPARTMENT OF HOMELAND SECURITY; and UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,**<br><br>**Defendants.** | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. The Southern Poverty Law Center, Inc. ("SPLC" or "Plaintiff") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory and injunctive relief to enforce its right to agency records from the Department of Homeland Security ("DHS") and its component agency, United States Immigration and Customs Enforcement ("ICE") (collectively, "Defendants").

2. Plaintiff seeks records related to Defendants' immigration enforcement operations ("immigration raids") in Georgia, North Carolina, and Texas on January

2 and 3, 2016.  During these immigration raids, ICE agents targeted 121 immigrant women and children in their homes, and removed them into custody.[1]  These raids have caused widespread panic and fear in immigrant communities nationwide, and witnesses' reports have raised serious concerns about potential due process and constitutional violations committed by ICE agents during the raids.

3. Plaintiff submitted a FOIA request to Defendants seeking specific information related to these immigration raids on January 7, 2016.  To date, Defendants have failed to produce any records or provide any substantive response to the request.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346.  This Court also has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).

5. Venue is proper in the Northern District of Georgia pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e). Venue is proper because a substantial portion of the events giving rise to this action occurred in this district, and because

---

[1] Statement by Secretary Jeh C. Johnson, Southwest Border Security (Jan. 4, 2016) *available at* https://www.dhs.gov/news/2016/01/04/statement-secretary-jeh-c-johnson-southwest-border-security ("As part of these operations, 121 individuals were taken into custody, primarily from Georgia, Texas, and North Carolina. . . .").

Defendants maintain records and information subject to the FOIA request in this district.

## PARTIES

6. Plaintiff SPLC is a non-profit organization dedicated to fighting hate and bigotry and to seeking justice for the most vulnerable members of our society. Through the use of public education, litigation, and other forms of advocacy, SPLC works towards a vision of equal justice and equal opportunity. SPLC has a longstanding commitment to defending the rights of immigrants, and provides free legal representation to immigrants who have suffered violations of their civil rights. SPLC submitted the FOIA request that is the subject of this action.

7. Defendant DHS is a federal agency within the meaning of 5 U.S.C. § 552(f). DHS is the executive department responsible for enforcing federal immigration laws and is an agency of the United States. DHS has possession of, and control over, the information sought by Plaintiff under FOIA.

8. Defendant ICE is a component agency of DHS and an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1). ICE agents conducted the immigration raids that took place in Georgia, North Carolina, and Texas on January

3

2-3, 2016.[2] ICE has possession of, and control over, the information sought by Plaintiff under FOIA.

## STATUTORY BACKGROUND

9. FOIA, 5 U.S.C. § 552, mandates disclosure of records held by a federal agency in response to a request for such records by a member of the public unless the records sought fall within certain narrow statutory exemptions.

10. The basic purpose of FOIA is to enable the public to hold the government accountable for its actions, through transparency and public scrutiny of governmental operations and activities. Through access to government information, FOIA helps the public better understand the government, thereby enabling a vibrant and functioning democracy. Freedom of Information Act, 74 Fed. Reg. 4683 (Jan. 26, 2009) ("In our democracy, the Freedom of Information Act (FOIA), which encourages accountability through transparency, is the most prominent expression of a profound national commitment to ensuring an open Government.").

---

[2] Statement by Secretary Jeh C. Johnson, Southwest Border Security (Jan. 4, 2016) *available at* https://www.dhs.gov/news/2016/01/04/statement-secretary-jeh-c-johnson-southwest-border-security ("This past weekend, Immigration and Customs Enforcement (ICE) engaged in concerted, nationwide enforcement operations to take into custody and return at a greater rate adults who entered this country illegally with children.").

11. Any member of the public may request records from an agency of the United States under FOIA. An agency that receives a FOIA request must respond in writing to the requestor within 20 business days after receipt of the request. 5 U.S.C. § 552(a)(6)(A)(i).[3] In its response, the agency must inform the requestor whether or not it intends to comply with the request, provide reasons for its determination, and inform the requestor of his or her right to appeal the determination. FOIA provides for an extension of this deadline "[i]n unusual circumstances" but limits this extension to "ten working days." 5 U.S.C. § 552(a)(6)(B)(i).

12. A FOIA requestor is deemed to have exhausted all administrative remedies if the agency fails to comply with the request within statutory time limits. 5 U.S.C. § 552(a)(6)(C)(i).

13. FOIA requires an agency to timely disclose all records to a FOIA request that do not fall within nine narrowly construed statutory exemptions. 5

---

[3] The FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538 (codified at 5 U.S.C. § 552 (2016)), which amended 5 U.S.C. § 552, was enacted on June 30, 2016, and is effective for any FOIA requests made after this date. This complaint cites to statutory requirements in effect at the time of the filing of Plaintiff's FOIA request, on January 7, 2016.

U.S.C. § 552(a)(3)(A); 5 U.S.C. § 552(b)(1)-(b)(9).  FOIA also requires an agency to make a reasonable search for responsive records.  5 U.S.C. § 552(a)(3)(C).

14.    Upon a requestor's complaint, a district court has jurisdiction to enjoin an agency from withholding records and to order production of records subject to disclosure.  5 U.S.C. § 552(a)(4)(B).

## FACTUAL BACKGROUND

15.    On January 2 and 3, 2016, ICE agents conducted a multistate enforcement operation, sweeping into homes across Georgia, North Carolina, and Texas.  Upon information and belief, ICE agents targeted and detained 121 people during these immigration raids, all of whom were women and children.  ICE agents removed these women and children from their homes, and transferred them to an immigration detention facility in Dilley, Texas.

16.    These raids have raised serious concerns about potential constitutional violations.  Upon information and belief, in several instances, ICE agents entered homes without obtaining lawful and voluntary consent during these immigration raids.  In these cases, ICE agents allegedly used deception to gain entry into the homes, stating that they were police officers looking for a criminal suspect and showing residents a photo of an African American man.  In other instances, ICE

agents allegedly stated that they were only taking the immigrants into custody for a short time to examine the women's electronic ankle shackles.

17. Upon information and belief, the ICE agents did not have warrants to conduct these raids.  The agents did not show residents copies of warrants, which are required to enter a home without valid consent, regardless of a person's immigration status.  When asked for copies of warrants or orders to enter a home, ICE agents ignored the requests, threatened residents, or ordered them to "be quiet."

18. Upon information and belief, ICE had granted many of the targeted immigrants permission to remain in the United States prior to the immigration raids. These immigrants had complied with orders of supervision provided by ICE, which permitted them to remain in the United States subject to certain conditions, including regular check-in appointments with ICE, or wearing electronic ankle shackles that allowed ICE to track their location.  These immigrants had consistently complied with the conditions of their orders of supervision.

19. Upon information and belief, all but approximately twelve of the detained families were subsequently deported.  The families that have been able to remain in the United States had insisted on speaking to a lawyer while detained, allowing their counsel to file petitions for stays of deportation with the Board of Immigration Appeals, all of which were uniformly granted.

20. These raids, and their impact on immigrant communities nationwide, have become the subject of immense public interest and criticism.[4] The raids immediately incited widespread panic and fear in immigrant communities across the country. Immigrant families stopped answering their doors, going to work or church, or attending school.[5] Public officials, including 146 members of Congress, condemned the raids.[6] Local governments have also voiced concern about the raids, citing the irreparable damage in trust between immigrant communities and local law

---

[4] *See, e.g.,* John Burnett, *Central American Families Fear Deportation as Raids Begin*, National Public Radio, Jan. 5, 2016; Nigel Duara and Molly Hennessy-Fiske, *Families are Taken into Custody as Push to Deport Immigrants Denied Refuge Begins*, Los Angeles Times, Jan. 3, 2016; Alan Gomez, *Raids Target Undocumented Immigrants in Georgia, North Carolina, and Texas*, USA Today, Jan. 4, 2016; Jeremy Redmon, *Federal Immigration Authorities Carrying Out Raids In Atlanta Region*, Atlanta Journal Constitution, Jan. 4, 2016; Dianne Solis, *Immigration Raids Begin Targeting Central Americans, DHS Defends Policy*, Dallas Morning News, Jan. 3, 2016.

[5] *See, e.g. Attendance Drops at Maryland High School as Deportation Fears Rise,* National Public Radio, Jan. 17, 2016; Daniel Hernandez, et al., *"Fear Overrides Everything:" Immigrants Desperate for Reassurance after ICE Raids,* The Guardian, Jan. 6, 2016; Esther Yu-Hsi Lee, *Obama's Immigration Raids Are Turning Latino Communities Into Ghost Towns*, Thinkprogress.org, Jan. 14, 2016; Natalie Sherman, *Baltimore Businesses Hurt Amid Fear of Immigration Crackdown*, Baltimore Sun, Jan. 18, 2016.

[6] Michael Oleaga, *Immigration Deportation Raids: 146 Congressional Lawmakers Tell Obama to Stop Deportation Raids*, Latin Post, Jan. 13, 2016.

enforcement agencies.[7]  Likewise, the national news media has raised concerns about potential due process and constitutional violations committed during the raids.[8]

## PLAINTIFF'S FOIA REQUEST

21. On January 7, 2016, Plaintiff served Defendants with a request for agency records pursuant to FOIA.  The request sought disclosure by Defendants of documents pertaining to the January 2-3, 2016 immigration raids.  A copy of Plaintiff's FOIA request is attached as Exhibit A.

22. The FOIA request sought the following categories of documents:

   1) Any and all records containing, describing, or referring to guidance, guidelines, rules, directives, policies, procedures, or trainings related to enforcement operations to identify, locate, arrest, or remove individuals apprehended at the southern border after May 1, 2014 without authorization, including, but not limited to individuals taken into custody in North Carolina, Georgia, and Texas on January 2 and 3, 2016; or discussing enforcement goals, quotas, or targets for such enforcement teams or operations;

---

[7] *See, e.g. Philadelphia Mayor's First Act Is to Rescind Cooperation with Immigration Agency*, FoxNewsLatino, Jan. 5, 2016; Bruce Leshan, *Montgomery County Slams Immigration Raids, Refuses to Cooperate*, Courier Post, Jan. 11, 2016; Imelda Mejia, *Concerns Spread Across Valley Amid Nationwide Immigration Raids*, Valley Central, Jan. 6, 2016; Aliyya Swaby, *"We're Going to Fight Back,"* New Haven Independent, Jan. 6, 2016.

[8] *See, e.g.* Matthew Teague, *Women and Children First: Legality of ICE Raids in Southern States Scrutinized*, The Guardian, Jan. 30, 2016; Elly Yu, *Immigration Raids in Georgia Raise Legal Concerns*, National Public Radio, Jan. 28, 2016.

2) Any and all records containing, describing, or referring to disciplinary complaints, press releases, public statements, and post-investigation reports for enforcement operations conducted by DHS in North Carolina, Georgia, and Texas on January 2 and 3, 2016, including, but not limited to lists of individuals relied upon during enforcement operations;

3) Any and all records containing, describing, or referring to assistance provided by or cooperation with local, state, or federal law enforcement officers or agencies, including, but not limited to local police departments or sheriffs in the jurisdictions of enforcement operations conducted by DHS in North Carolina, Georgia, and Texas on January 2 and 3, 2016. Such records may include, but are not limited to agreements with counties, cities, towns, and municipalities, or any agent thereof; information-sharing agreements, including, but not limited to proposed agreements, Memoranda of Agreements, Memoranda of Understanding; or communication between DHS agents and any local or state law enforcement official;

4) Any and all records containing, describing, referring to, or revealing the following information related to enforcement operations conducted by DHS in North Carolina, Georgia, and Texas on January 2 and 3, 2016:

   a. Individuals Apprehended by Immigration and Customs Enforcement ("ICE") or other DHS component agencies, including Homeland Security Investigations ("HIS"):

      i. Name, date of birth, nationality, race and ethnicity, and location of any individual apprehended by ICE;

      ii. The name of any officers involved in the individual's apprehension by ICE;

      iii. Any warrant of deportation/removal, or search warrant relied upon in the course of arresting each individual;

    iv. Any other document containing information on the individual relied upon in relation to the apprehension, including any documents containing a photograph and/or printed material related to the individual apprehended;

  b. Other Individuals Not Apprehended During Enforcement Operations

    i. The name, date of birth, nationality, and race and ethnicity of other individuals encountered but not apprehended during enforcement operations;

  c. Location of Enforcement Operations

    i. Address of any residence that ICE sought to enter in the course of enforcement operations; that ICE entered in the course of enforcement operations; and that ICE sought to enter, but failed, to gain entry in the course of enforcement operations;

    ii. For each residence entered, the date and time of entry and duration of the presence of any DHS officers; whether ICE possessed a warrant of any kind, and if so, the type of such warrant; the number of individuals encountered at the residence, arrested at the residence, manner and circumstances of entry, and legal authority for entry. For each residence where "consent" formed the purported legal basis of entry, by and to whom consent was given to enter, and the circumstances under which consent was obtained;

  d. All press releases, statements, post-investigation reports, summaries, or records of communication within federal agencies or federal and local agencies;

5) Any and all records containing, describing, pertaining to, or referring to aggregate statistical reports or data regarding the

enforcement operations or raids conducted in North Carolina, Georgia, and Texas on January 2 and 3, 2016.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

23. On January 7, 2016, Plaintiff submitted its FOIA request to ICE. On January 8, 2016, ICE sent email correspondence to Plaintiff confirming receipt of the FOIA request, and assigned the request a tracking number. ICE stated that it would determine whether any responsive documents could be produced in response to the request. ICE also denied SPLC's request for a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). A copy of this email is attached as Exhibit B. Plaintiff timely appealed ICE's denial of a fee waiver request on March 1, 2016. A copy of this appeal is attached as Exhibit C. On March 31, 2016, ICE granted Plaintiff's request for a fee waiver, but failed to provide any further response to the FOIA request, nor did it produce any records in response to the request. A copy of ICE's letter is attached as Exhibit D. To date, Defendants have not provided any further communication or disclosure in response to Plaintiff's FOIA request.

24. FOIA requires that an agency "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i). FOIA provides for an extension of this deadline "[i]n unusual

circumstances" but limits this extension to "ten working days."  5 U.S.C. § 552(a)(6)(B)(i).  In its January 8, 2016 email, ICE stated that it would invoke this ten-day extension.  Exhibit B.

25. FOIA requires an agency to timely disclose all records to a FOIA request that do not fall within nine narrowly construed statutory exemptions.  5 U.S.C. § 552(a)(3)(A); 5 U.S.C. § 552(b)(1)-(b)(9).  A FOIA requestor is deemed to have exhausted all administrative remedies if the agency fails to comply with the statutory time limits.  5 U.S.C. § 552(a)(6)(C)(i).  Upon complaint, a district court has jurisdiction to enjoin the agency from withholding records and to order production of records that are subject to disclosure.  5 U.S.C. § 552(a)(4)(B).

26. It has now been over six months since Plaintiff submitted its FOIA request, and Defendants have failed to produce any records or provide a substantive response to the request.  Plaintiff has now therefore exhausted its administrative remedies with respect to the FOIA request.

# CAUSES OF ACTION

## COUNT I:

## VIOLATION OF THE FREEDOM OF INFORMATION ACT

27. Plaintiff realleges and incorporates the allegations contained in the foregoing numerical paragraphs as if each such allegation was set forth herein in its entirety.

28. Defendants have violated 5 U.S.C. § 552(a)(3)(A) by failing to promptly release agency records in response to the FOIA request.

29. Defendants have violated 5 U.S.C. § 552(a)(3)(C)-(D) by failing to make reasonable efforts to search for records responsive to the FOIA request.

30. Defendants have violated 5 U.S.C. § 552(a)(6)(A)(i) by failing to make a determination regarding the FOIA request within the governing statutory time limit.

31. Injunctive relief is authorized under 5 U.S.C. § 552(a)(4)(B) because Defendants continue to improperly withhold agency records in violation of FOIA. Plaintiff will suffer irreparable injury from, and have no adequate remedy for, Defendants' illegal withholding of government documents subject to its FOIA request.

32. Declaratory relief is authorized under 22 U.S.C. § 2201 because an actual and justiciable controversy exists regarding Defendants' improper withholding of agency records in violation of FOIA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff herewith prays for the following relief:

(a) For a judicial declaration that Defendants' failure to disclose the records requested by Plaintiff is unlawful;

(b) For injunctive relief ordering Defendants to immediately and expeditiously process Plaintiff's FOIA request and, upon such processing, to make the requested records available to Plaintiff;

(c) For Plaintiff's reasonable attorney's fees and litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(d) For such other relief as the Court may deem just and proper.

Respectfully submitted, this 9th day of August, 2016.

/s/ *Eunice H. Cho*
Eunice H. Cho
Georgia Bar No. 632669
SOUTHERN POVERTY LAW CENTER
1989 College Ave. NE
Atlanta, GA 30317
(404) 521-6700 (Tel)
(404) 221-5857 (Fax)

Lisa S. Graybill*
Texas Bar No. 24054454
SOUTHERN POVERTY LAW CENTER
1055 St. Charles Ave., Ste. 505
New Orleans, LA 70130
(504) 486-8982 (Tel)
(504) 486-8947 (Fax)
*petition for *pro hac vice* forthcoming

David L. Gann
Georgia Bar No. 940455
Lindsey Yeargin
Georgia Bar No. 248608
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree St., Ste. 4900
Atlanta, GA 30309
(404) 881-7000 (Tel)
(404) 881-7777 (Fax)

*Attorneys for
Plaintiff Southern Poverty Law Center*

## CERTIFICATE OF COMPLIANCE WITH LR 5.1

I hereby certify that the foregoing document is written in 14 point Times New Roman font in accordance with Local Rule 5.1.

/s/ *Eunice H. Cho*
Eunice H. Cho